807 So.2d 476 (2001)
Clarice Woolbright BAKER, Appellant,
v.
Norman Kenneth BAKER, Appellee.
No. 1998-CA-01675-COA.
Court of Appeals of Mississippi.
December 11, 2001.
Rehearing Denied February 12, 2002.
*477 William R. Wright, Jackson, W. Benton Gregg, Jackson, Stacey P. Stracener, Jackson, Attorneys for Appellant.
John W. Chapman, Brandon, Attorney for Appellee.
Before McMILLIN, C.J., THOMAS, and CHANDLER, JJ.
McMILLIN, C.J., For The Court.
¶ 1. Clarice and Norman Baker dissolved their marriage of some thirty years by mutually agreeing that irreconcilable differences had arisen between them. The agreement to end the marriage marked the limit of their ability to agree. As a result, the parties submitted all matters pertaining to the financial aspects of the marriage dissolution to the chancellor for determination. The parties' children were emancipated, so there were no issues of child custody or support.
¶ 2. The chancellor, after hearing evidence relevant to the parties' finances, fashioned a division of marital assets that, according to the chancellor's calculations, represented an essentially equal division of the property. He denied Mrs. Baker's claim for periodic alimony. Mrs. Baker, dissatisfied with the chancellor's decision, has appealed to this Court. In her appeal, Mrs. Baker asserts what she contends to be five separate errors committed by the chancellor which warrant reversing the judgment in its present form. Our analysis of the issues presented leaves us convinced that there are, in fact, only three relevant issues for consideration on appeal. The first is that the chancellor abused his discretion in the division of marital assets in that he failed to properly determine a value for certain assets, which Mrs. Baker contends to be a necessary prerequisite to a fair division. Secondly, Mrs. Baker contends that the chancellor was unduly generous to Mr. Baker in dividing assets. The third issue is that the chancellor erred in declining to award Mrs. Baker periodic alimony, taking into account the relevant factors.
¶ 3. Mrs. Baker seeks to raise an additional issue in which she expresses her exasperation at the effort required by her to obtain an accurate transcription of the hearing for consideration on appeal. While any such difficulties are regrettable, there is no contention that the record now before this Court is inadequate or inaccurate. Therefore, we do not consider such difficulties, as unfortunate and frustrating as they may be, as constituting grounds to reverse the present judgment.

I.

Facts
¶ 4. This couple was married for a total time of some thirty years, during which *478 time two children were born. The marriage was not always smooth. Rather, it was marked by several periods of separation that would extend for several months at a time. Mr. Baker testified that these separations were principally financially motivated in that he would relocate to another city to seek employment. Mrs. Baker contends that the separations were the result of difficulties in the marriage that caused Mr. Baker to voluntarily absent himself from the marital residence and abandon any effort to provide support to her during his extended absences.
¶ 5. Mr. Baker worked a number of years early in his career for IBM, leaving in 1993 under an offer in the nature of an early retirement program. As a result of that, he received a lump sum separation payment and began drawing periodic retirement benefits of $1,759 a month commencing in February 1998. Mr. Baker held a number of other jobs in the ensuing years and was, at the time of the hearing, employed at the University of Mississippi Medical Center in a position involved in computer operations. His monthly salary at the center was approximately $3,562. He was fifty six years of age at the time of the divorce hearing and had been employed at the Medical Center for approximately one year.
¶ 6. Mrs. Baker had devoted many of the early years of the marriage to the duties associated with being a homemaker and principal care provider for the minor children of the marriage. However, she had worked for a number of years prior to the divorce hearing as a school teacher in the public school system. She reported her monthly salary from that employment at the time of the divorce to be $2,478, and there was evidence that she had fifteen years in the state retirement system, which was enough time in service for her to have a vested right to retirement benefits.
¶ 7. The principal assets dealt with by the chancellor were (a) the marital domicile, to which he assigned a net value of $63,689 after taking into account an existing mortgage and (b) a residential lot owned by the parties in Point Clear. That lot was unencumbered by any mortgage debt and the chancellor valued it at $137,500. The chancellor awarded the marital home to Mrs. Baker and the Point Clear lot to Mr. Baker. He additionally awarded Mrs. Baker the entire balance in her state retirement account of $23,000 along with $1,881.25 in various tax refunds and medical insurance reimbursements that were on hand at the time of the divorce. Mr. Baker, besides getting the Point Clear lot, was awarded an automobile valued at $4,000, and accrued retirement benefits in his name totaling $10,479.
¶ 8. The parties were jointly indebted on a loan having a balance of approximately $12,000, which was secured by a second mortgage on the marital domicile. The chancellor ordered Mr. Baker to assume sole responsibility for this debt. In calculating the equitable distribution of marital assets, the chancellor calculated the impact of this decision by adding $6,000 to Mrs. Baker's distribution and subtracting $6,000 from Mr. Baker's share of the divided assets. After making this adjustment, the chancellor determined that Mrs. Baker was receiving assets having a total value of $94,570.25 and that Mr. Baker's share came to $145, 979. Upon calculating the difference between these two sums to be $51,409.25, the chancellor ordered that Mr. Baker pay to his former wife this sum, payable without interest over a forty-eight month period in monthly installments of $1,081 each.
¶ 9. As we have already noted, in addition to Mr. Baker's vested retirement benefits *479 itemized above, he was receiving a retirement benefit from IBM in the amount of $1,759 per month. Though Mrs. Baker had asserted a claim to one-half of this benefit, the chancellor's decision made no such award. Additionally, Mrs. Baker had sought some provision for periodic alimony in addition to the equitable division of marital assets. The chancellor declined to order payment of any such periodic alimony. In explaining his ruling, the chancellor appeared to lump these two requests into one when he stated as follows: "The Court is not unmindful of the husband's retirement system but my notes do not reflect any of the gross figures which is one of the reasons I did not assess alimony."

II.

Valuations
¶ 10. Mrs. Baker alleges that the chancellor could not possibly have made a fair division of the marital assets because he did not, as a prerequisite to beginning that division, make a finding of fact as to the value of the assets as required in Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). Other than complaining regarding the conflict in the evidence concerning the market value of the marital dwelling, Mrs. Baker does not point to any asset of any particular consequence that was not the subject of a valuation in the chancellor's ruling. Even though the evidence was in conflict as to the marital home's value, the chancellor assigned a value to it and there is evidence in the record to support that determination. As to findings of fact on conflicting evidence, the chancellor's decision is reviewed on an abuse of discretion standard. Cheatham v. Stokes, 760 So.2d 795, 799(¶ 21) (Miss.Ct. App.2000). We find no basis to conclude that the chancellor erred in his determinations of value of the various major assets accumulated by the parties during their marriage and subject to equitable distribution on the marriage's dissolution.
¶ 11. There is a single exception to our holding in the matter of valuations, which involves the matter of the chancellor's decision to ignore altogether Mr. Baker's retirement benefits from IBM in winding up the financial aspects of this long-standing marriage; however, we will deal with that matter later in this opinion. Subject to that caveat, we decline to reverse the chancellor's ruling based upon a finding that he did not properly make the necessary findings of value of the assets he was called upon to divide.

III.

The Division of Marital Assets
¶ 12. The chancellor, in making a division of marital assets, is required by existing case law to be guided by certain specific factors outlined in the case of Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). The Mississippi Supreme Court, in a post-Ferguson decision, held that it is necessary for the chancellor to separately consider and make findings of fact as to each of the relevant Ferguson factors as a prelude to his actual determinations. See Heigle v. Heigle, 771 So.2d 341, 346-347 (¶ ¶ 16 & 17) (Miss.2000). To fail to specifically address these issues on the record deprives an appellate court of the information necessary to undertake a meaningful review of the chancellor's decision to determine whether an abuse of discretion has occurred that would require reversal. Kilpatrick v. Kilpatrick, 732 So.2d 876, 881(¶ 19) (Miss.1999). Thus, the supreme court has held that the failure to make such findings is, of itself, an abuse of discretion that requires reversal and remand. Heigle, 771 So.2d at 348(¶ 20).
*480 ¶ 13. In the case now before us, the chancellor limited his on-the-record findings to a determination that Mr. Baker made the greater financial contribution to the marriage while Mrs. Baker "contributed the greater time raising the children." Aside from that, the chancellor simply made the conclusory statement that, in making the division, he was "using guidelines from Ferguson v. Ferguson, 639 So.2d 921...." There were other relevant considerations enumerated in the Ferguson case as to which evidence was presented at trial. Simply by way of example, one factor is each spouse's "[c]ontribution to the stability and harmony of the marital and family relationship...." Ferguson, 639 So.2d at 928. There was substantial evidence developed regarding Mr. Baker's repeated and prolonged absences from the marital domicile, which Mr. Baker sought to characterize as being based purely on economic necessity and which Mrs. Baker alleged were due to her husband's abandoning the marital relationship both emotionally and financially for extended periods. The resolution of this dispute in the trial certainly had at least the possibility of affecting a fair distribution of the marital assets, yet this Court has nothing before it that would permit us to understand the effect, if any, given this factor in the chancellor's ultimate determination.
¶ 14. We conclude that it is necessary to reverse and remand on this issue because of the chancellor's failure to make a point-by-point analysis using all the relevant Ferguson factors to explain his division of the marital assets.

IV.

Periodic Alimony
¶ 15. The record shows that, at the time of the divorce, Mr. Baker enjoyed a monthly gross income of approximately $5,217 while Mrs. Baker's income was about $2,478 per month. Included in Mr. Baker's monthly income was the IBM retirement benefit of $1,759 already alluded to in this opinion. The Mississippi Supreme Court has said that, upon completing an equitable division of the marital assets, the court's work may be finished if it reasonably appears that the assets so apportioned, when considered with each divorcing spouse's non-marital assets, will adequately provide for both. Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994). However, if the chancellor determines that a deficit still exists, he must consider additionally an award of alimony in some form. Id.
¶ 16. If Mr. Baker's retirement benefits are considered as regular income to him, then it seems readily apparent that, upon the dissolution of a marriage of over thirty years through no apparent fault of Mrs. Baker, it creates a "deficit" within the meaning of Johnson v. Johnson to leave Mrs. Baker with monthly income less than half that received by Mr. Baker. The inequity of that situation is made more apparent when consideration is given to the fact that a substantial portion of Mr. Baker's monthly income is derived from vested retirement benefits accrued during the course of the marriage, and as to which Mrs. Baker received absolutely no consideration in the equitable division of property, while the chancellor at the same time treated Mrs. Baker's vested teacher retirement account as a part of the assets distributed to her.
¶ 17. It is within the discretion of the chancellor to make a division of vested retirement accounts. Watson v. Watson, 724 So.2d 350, 356(¶ 27) (Miss. 1998). It is also within the chancellor's discretion to award periodic alimony to bring a measure of fairness to an otherwise unfair situation existing after the *481 property division. Turpin v. Turpin, 699 So.2d 560, 564-65(¶ 16) (Miss.1997). The supreme court has quite properly noted that it is the overall result that must be considered when assessing the ultimate fairness of the award, rather than a separate assessment of the different issues. Id.
¶ 18. There can be no legitimate dispute that a vested retirement benefit entitling the recipient to a monthly payment of $1,759 is a substantial benefit, whether considered as monthly income or whether the underlying value of the account producing that monthly benefit is considered. Thus, we are satisfied that the chancellor's decision to simply ignore this valuable asset in the process of bringing the financial aspects of this dissolving marriage to an end was a manifest abuse of discretion. Despite so finding, we also conclude that there are multiple ways of equitably dealing with this retirement benefit on remand, either through its treatment as a marital asset subject to a revised equitable distribution or through leaving the asset solely with Mr. Baker but making an appropriate award of periodic alimony. We leave that determination to the chancellor on remand.

V.

Conclusion
¶ 19. Because of the chancellor's failure to give any consideration to Mr. Baker's substantial retirement benefit from IBM accrued during the course of the marriage, and because of the chancellor's failure to make detailed findings of fact regarding the necessary factors that affect a proper equitable division of marital assets, we find it necessary to reverse and remand. Because of the possibility that the chancellor will adjust the equitable division of marital assets based on his evaluation of the Ferguson factors and based on taking into account Mr. Baker's vested retirement benefits, we do not necessarily determine that periodic alimony is necessary. Instead, we simply observe that, based on this marriage of long duration, the ultimate result should be a situation where Mrs. Baker is not left with a significant deficit in assets and income when her post-divorce financial situation is compared to that of her former husband.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THE TERMS OF THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING and SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. BRIDGES, J., NOT PARTICIPATING.